IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03540-PAB-STV

FAITH GERMAN, and
ASHLYN HOFFMAN, on behalf of themselves and those similarly situated,

      Plaintiffs,

v.

HOLTZMAN ENTERPRISES, INC. d/b/a Great Clips-HEI,

      Defendant.

---

ORDER

---

    This matter comes before the Court on the parties' Joint Motion for Preliminary Approval of Proposed Collective and Class Action Settlement [Docket No. 168]. The Court has jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND

    On December 13, 2019, plaintiffs Faith German and Ashlyn Hoffman filed suit on behalf of themselves and those similarly situated against defendant Holtzman Enterprises, Inc. ("Holtzman"), alleging violations of Colorado wage laws and the Fair Labor Standards Act ("FLSA"). Docket No. 168 at 1; Docket No. 1 at 1-2, ¶ 1. Plaintiffs claim that Holtzman required its employees to perform off-the-clock work, failed to provide rest breaks, and improperly deducted meal breaks that employees did not receive from employees' pay. Docket No. 168 at 1. On March 22, 2021, the Court conditionally certified the case as a collective action under the FLSA. Docket No. 68 at 11. The Court required plaintiffs to send notice to putative FLSA collective members so

that those members could opt in to the collective.  *Id.* at 11-12.  On March 18, 2022, plaintiffs moved to certify a class action under Federal Rule of Civil Procedure 23. Docket No. 128.

On August 16, 2022, the parties participated in mediation conducted by Judge William F. Downes (Ret.).  Docket No. 141 at 1; Docket No. 168 at 1.  Following mediation, the parties negotiated for approximately four months, coming to terms on a class-wide settlement for plaintiffs and a settlement class consisting of Holtzman's current and former employees.  Docket No. 168 at 1.  The parties now jointly ask the Court to certify the settlement class and preliminarily approve the proposed settlement. *Id.* at 29-30.

## II.  LEGAL STANDARD

Approval of a class action settlement under Federal Rule of Civil Procedure 23 takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Crocs, Inc. Sec. Litig.*,

No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action under Rule 23 should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives.*" See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso ("Shook I")*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 564 U.S. at 350-51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  In the typical case where the plaintiff applies

3

for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook I*, 386 F.3d at 968).

Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).  A class action may be sustained if these requirements are satisfied and the class meets the requirements of one of the categories of Rule 23(b).  Fed. R. Civ. P. 23(b).

The parties ask the Court to certify a settlement class under Rule 23(b)(3). Docket No. 168 at 10-11.  Under that provision, the parties must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  To certify a settlement class, the Court need not inquire whether the

4

case, if tried, would present difficult management problems under Rule 23(b)(3)(D).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  However, all of the other

Rule 23 requirements apply and demand heightened attention in the settlement context

because the Court generally lacks an opportunity to adjust the class as the case

unfolds.  *Id.*

Here, the parties seek a "hybrid settlement" because plaintiffs have alleged both

FLSA and state law claims.  Docket No. 168 at 9-10.  Under the FLSA, putative

members of a collective action are bound by a judgment only if they opt in to the case.

*Dolan v. Project Const. Corp.*, 725 F.2d 1263, 1266 (10th Cir. 1984), *abrogated on other*

*grounds by Hoffman-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989).  In contrast,

putative members of a class action formed under Rule 23(b)(3) are bound by a

judgment unless they timely opt out of the class.  Fed. R. Civ. P. 23(c)(2)(B).  Although

the opt-in requirement of FLSA collective actions conflicts with the opt-out provisions of

Rule 23(b)(3) class actions, courts have permitted parties to enter into hybrid

settlements to resolve both FLSA and state law claims.  *See, e.g., Pliego v. Los Arcos*

*Mexican Restaurants, Inc.*, 313 F.R.D. 117, 123-25 (D. Colo. 2016).  Where parties

seek settlement of a hybrid action, the settlement is evaluated on a combination of the

factors required for preliminary approval of an FLSA action and those required for

approval of a Rule 23 class settlement.  *Id.* at 128.

Under Rule 23, if the proposed settlement class satisfies the requirements of

Rules 23(a) and (b), then the Court must separately evaluate whether the settlement

agreement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l*

*Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).  Under the FLSA, the Court must

find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

If the settlement meets the requirements for preliminary approval, the Court will direct notice to all class members who would be bound by the proposed settlement and hold a fairness hearing to determine if

> it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Although the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the Court's preliminary inquiry and thus it is appropriate to review them.

A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## III.  PROPOSED SETTLEMENT

The settlement agreement defines the settlement class as:

all current and former receptionists, stylists, assistant managers and managers who worked for defendant in Colorado between December 13, 2017 and December 14, 2022.

Docket No. 168-1 at 7, ¶ 1.  There are no subclasses.  *Id.*  In exchange for the release of all claims by class members, Holtzman has agreed to pay an "all-inclusive" settlement payment of $650,000 for the benefit of the class.  *Id.*, ¶ 2.  The parties agree that the monetary value of the settlement, excluding the amount of attorney's fees and costs or service awards, would provide the proposed class with higher payments than it would receive as a result of a jury verdict.  Docket No. 168 at 2.  The settlement agreement contains no confidentiality provisions.  *See generally* Docket No. 168-1.

The agreement states that the total payment of $650,000 shall be divided as follows:

| $234,571.17 | Gross Class Settlement Amount |
| $100,000 | Gross Overtime Collective Settlement Amount |
| $195,000 | Attorneys' Fees |
| $79,178.83 | Plaintiffs' Costs |
| $21,250 | Administration Costs |
| $20,000 | Service Award for Plaintiffs ($10,000 each) |

*Id.* at 8, ¶ 3.  The amount to be distributed to each class member will be a pro-rata portion of the "Net Settlement funds" based on the number of hours each class member worked for Holtzman.  *Id.* at 21, ¶ 30.  The agreement defines "net settlement funds" as the total payment minus the amount approved for plaintiffs' counsel's fees, plaintiffs' costs, administration costs, and the service award for the class representatives.  *Id.* at 5-6.  Based on the distribution of the settlement funds listed above, the "net settlement funds" is equivalent to $334,571.17.  The parties have agreed to a payment of

attorneys' fees to plaintiffs' counsel equivalent to 30% of the total settlement payment, not to exceed $195,000.  *Id.* at 8-10, ¶¶ 5-6; Docket No. 168 at 5-6.

The settlement agreement designates Rust Consulting as the third-party administrator of the settlement.  Docket No. 168-1 at 5.  Rust Consulting will administer the process of: (1) disseminating the notice and opt-out forms to putative class members; (2) disseminating settlement payments to class members; and (3) distributing plaintiffs' counsel's attorneys' fees, plaintiffs' costs, plaintiffs' settlement payments, and plaintiffs' service awards.  *Id.* at 18-20, 22-23, ¶¶ 20-21, 23-25, 28, 31-33.

## IV.  ANALYSIS OF PROPOSED SETTLEMENT CLASS UNDER RULE 23

On March 22, 2021, the Court conditionally certified the following FLSA collective:

> all hourly, non-exempt employees who worked for Defendant in the State of Colorado any time within three years of the filing their written consent through final disposition of this case, who were eligible for but did not receive overtime compensation on account of Defendant's payment policies and practices.

Docket No. 68 at 11.  The parties now seek to certify the following settlement class:

> all current and former receptionists, stylists, assistant managers and managers who worked for defendant in Colorado between December 13, 2017 and December 14, 2022.

Docket No. 168 at 10.  The parties ask the Court to certify the class as a "Rule 23 and FLSA § 216(b) settlement-only class."  *Id.*  The FLSA class that the Court preliminarily certified in 2021 includes the putative members of the proposed settlement class. Accordingly, the Court will consider whether the settlement class also satisfies the requirements of Rule 23.

### A.  Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed after a certain number; however, the Tenth Circuit has never adopted a minimum presumption of numerosity.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was sufficient to warrant class certification).  Furthermore, the Tenth Circuit has held that ascertainability is a "sub-requirement" of numerosity.  *Evans v. Brigham Young University,* 2023 WL 3262012, at *5 (10th Cir. May 5, 2023).  To satisfy this requirement, a court must be able to determine who falls into the class without engaging in individualized or subjective determinations.  *Id.* (citation omitted); *see also Helmer v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ-MEH, 2014 WL 1133299, at *3 (D. Colo. Mar. 21, 2014) (citing *Joseph v. Gen. Motor. Corp.,* 109 F.R.D. 635, 638 (D. Colo. 1986)).

The parties state that there are 809 putative class members who are geographically scattered across Colorado.  Docket No. 168 at 11.  Although the Tenth Circuit has never established a threshold of presumptive numerosity, a class of 809 members is significantly larger than the one whose certification the Tenth Circuit upheld in *Trevizo*.  455 F.3d at 1162.  The class members' geographic locations across Colorado also supports a finding of numerosity.  *See Colorado Cross-Disability Coal. v. Taco Bell Corp.,* 184 F.R.D. 354, 358 (D. Colo. 1999) ("The fact that a class is

dispersed over several counties weighs in favor of a finding of numerosity") (citation omitted).

The parties state that the class members are ascertainable through Holtzman's payroll records.  Docket No. 168 at 11.  The proposed class definition presents objective criteria for class membership—individuals holding particular job titles during a finite period of time—which can be applied Holtzman's payroll records to identify class members.  Accordingly, the proposed class is ascertainable.  Therefore, the Court finds that the proposed class satisfies the numerosity requirement of Rule 23.

### 2.  Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality requires that the plaintiff demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Even a single common question will satisfy commonality.  *Dukes*, 564 U.S. at 359.  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist. *Devaughn*, 594 F.3d at 1195.

The parties allege that the putative class satisfies commonality "because the common question at the core of each of the Class Member's claims is whether

Defendant's policies and practices resulted in violations of state and federal wage law." Docket No. 168 at 12.  The parties state that the class members' claims "turn on the same legal analysis" even if the factual bases of the members' claims differ based on the number of hours each member worked.  *Id.*  Courts have issued findings of commonality where "the proposed class members' claims arise from the same alleged course of conduct" by their employer.  *Brayman v. KeyPoint Gov't Solutions, Inc.,* 595 F. Supp. 3d 983, 998 (D. Colo. 2022); *see also Kamar v. Radio Shack Corp.,* 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability."); *Lewis v. Alert Ambulette Serv. Corp.,* 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) ("In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.") (citation omitted).  Accordingly, the Court finds that the commonality requirement has been satisfied.

### 3.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The interests and claims of the lead plaintiff and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Devaughn*, 594 F.3d at 1199.

The parties allege that the named plaintiffs' claims are typical of the putative class because, "[l]ike all members of the putative class, they allege they were not paid for all hours worked, were deprived of rest breaks, were required to deduct time from their pay for meal breaks that were not received and were denied overtime premiums." Docket No. 168 at 13. That is, the named plaintiffs "challenge[] the same conduct that would be challenged by the class." *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. Jun. 1, 2011) (citing *Johnston v. HBO Film Mgmt, Inc.,* 265 F.3d 178, 184 (3rd Cir. 2001)). Accordingly, the Court finds that typicality is satisfied.

### 4. Adequacy of the Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted). As such, the "inquiry under Rule 23(a)(4) serves to

uncover conflicts of interest between named parties and the class they seek to represent."  *Id.* at 625.  To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id*. at 625-26.  As discussed above, the Court has found that the named plaintiffs bring claims typical of the proposed class and suffered the same injury by virtue of being subject to the same policies and practices as class members.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted).  Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees.  *Ellis*, 657 F.3d at 985.

The parties argue that the "Plaintiffs' attorneys' incentives are aligned with the Class as their continent fee agreement with plaintiffs only allows the attorneys to be compensated if they successfully prosecute the suit."  Docket No. 168 at 14.  *See Rutter*, 314 F.3d at 1188 (holding that circumstances that "would motivate Plaintiffs' counsel to seek the largest overall award possible" supported a finding of adequacy).  The parties also note the extensive experience that plaintiffs' counsel has in litigating wage and hour class actions similar to this case.  Docket No. 168 at 14 n.3.  Such experience also supports a finding of adequacy on the part of plaintiffs' counsel.  *See Troudt v. Oracle Corp.*, 325 F.R.D. 373, 377, 381 (D. Colo. 2018) (finding class counsel

competent where counsel demonstrated "extensive experience in the relevant area of law"). Accordingly, the Court finds that the parties have established adequacy of representation, and thus, the parties have satisfied all prerequisites of Rule 23(a).

**B. Rule 23(b)(3)**

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615. Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). However, to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620.

**1. Predominance**

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement.

*Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.

The parties argue that common questions predominate because all of the class members' claims stem from Holtzman's uniform policies and practices and that they seek relief under the same legal theories.  Docket No. 168 at 15-17.  They agree that, "for the purposes of settlement, the class members were subject to the same practices related to the payment of their wages and break entitlements, during a specific time period, and therefore these claims do not present predominance-defeating individual issues."  *Id.* at 16.  Precedent from this district supports a finding of predominance in this context.  *See Brayman*, 595 F. Supp. 3d at 997-98 (finding predominance where class members' claims concerning overtime, breaks, and other employment law violations stemmed from their employer's purported unlawful policies).  The parties note that class members' awards will vary depending on the number of hours that each individual worked, but they argue that variation in the amount of damages owed to individual class members, without more, cannot preclude class certification.  Docket No. 168 at 16 (citing *Roach v. T.L. Cannon Corp.*, 778  F.3d 401, 409 (2nd Cir. 2015) ("individualized damages determinations alone cannot preclude certification under Rule

23(b)(3)")).  Accordingly, the Court finds that the parties have satisfied the predominance requirement of Rule 23(b)(3).

### 2. *Superiority*

The parties allege that, to plaintiffs' knowledge, no other class member has pursued litigation or administrative remedies for unpaid wages against Holtzman and, therefore, no other potential class member has a demonstrated interest in controlling this litigation.  Docket No. 168 at 17-18.  Furthermore, they argue that class members are unlikely to pursue claims on their own because "the putative class members are all lower-wage workers and have varying degrees of English language proficiency or advanced education."  *Id.* at 18.  "Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued."  *Pliego*, 313 F.R.D. at 127 (collecting cases).  Accordingly, the Court finds that the parties have demonstrated superiority and thus, have satisfied the requirements of Rule 23(b)(3).

Therefore, the Court finds that the parties' proposed settlement class satisfies the prerequisites of Rule 23 and may therefore be certified as a settlement class pursuant to Rule 23 and FLSA § 216(b).

## V.  ANALYSIS OF THE PROPOSED SETTLEMENT

In *Pliego,* Magistrate Judge Tafoya combined the factors applicable to a preliminary approval of an FLSA action and those applicable to approval of a Rule 23 class settlement to determine whether to grant preliminary settlement approval.  313 F.R.D. 128.  The factors she considered were whether: (1) there was a bona fide dispute in an adversarial context concerning disputed questions of law and fact; (2) the

plaintiffs were represented by competent and experienced counsel; (3) the settlement agreement was honestly negotiated; (4) the settlement was fair and reasonable, including that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; (5) the parties think the settlement is fair; (6) the service payment to the named plaintiff was reasonable; and (7) the release language in the settlement agreement comports with Rule 23 and the FLSA. *Id.* at 128-32. *Pliego* was a class action brought by restaurant employees alleging violations of the FLSA and Colorado wage law, including the failure to pay overtime wages where the parties jointly moved for preliminary approval of their hybrid settlement. *Id.* at 122. Because of the factual similarities between *Pliego* and the motion before the Court, the Court will adopt Judge Tafoya's framework to evaluate the parties' settlement agreement.

### (1) Bona Fide Dispute in an Adversarial Context Concerning Disputed Questions of Law and Fact

"To meet their obligation to prove a bona fide dispute, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Id*. at 128-29 (citations omitted).

The parties summarize the action as a dispute as to whether Holtzman's policies and practices surrounding off-the-clock work and rest and meal breaks violated state and federal wage law. Docket No. 168 at 22. The parties state that Holtzman operates

17

twenty-eight salons throughout Colorado and plaintiffs are current or former hourly employees who worked as receptionists, stylists, assistant managers, and managers, the majority of whom performed hairstyling services.  *Id.*  The parties state that it is Holtzman's position that employees were paid all of their regular and overtime wages and that the employees received their legally mandated breaks.  *Id.*  The parties state that plaintiffs allege that Holtzman required employees to perform work off-the-clock and deprived employees of rest and meal breaks, some of which were nevertheless deducted from the employees' time each shift.  *Id.* at 22-23.  The parties also state that they "vigorously disputed the damages owed to class members," although they fail to restate each party's estimate of the number of hours worked and the wage that applies.  *Id.* at 23.  The parties represent that settlement "was born of an adversarial process with all involved advocating for their clients."  *Id*.  In sum, the parties have demonstrated that the action concerns a bona fide grievance and is not "sham litigation."  *See Pliego*, 313 F.R.D. at 129 (holding that this factor was satisfied because where a case "is not sham litigation and . . . very much involves a bona fide dispute between adversarial opponents").  Accordingly, the Court finds that the settlement emerges out of a bona fide dispute in an adversarial context concerning disputed questions of law and fact.

### (2) Competent and Experienced Counsel

As described above, the parties have established that plaintiffs' counsel is experienced in wage litigation.  Accordingly, the Court finds that this factor is satisfied.

### (3) Honestly Negotiated

A settlement is likely to be found to be the result of non-collusive, arms-length negotiations if it is preceded by a lengthy period of adversarial litigation and substantial

discovery and the settlement is the result of negotiation before a third-party mediator. *Newberg on Class Actions*, § 13:14 (6th ed.). Here, the parties have been engaged in litigation since 2019 and state that they have conducted "extensive discovery." Docket No. 168 at 23. Additionally, the proposed settlement is a result of mediation with Judge Downes and "many back-and-forth offers and demands for approximately four months thereafter." *Id.* Accordingly, the Court finds that the settlement was honestly negotiated.

### (4) Fair and Reasonable Settlement, Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief

For a settlement to be considered fair and reasonable under the FLSA, it must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales. *Pliego,* 313 F.R.D. at 130; *see also Baker v. Vail Resorts Mgmt. Co.,* No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *2 (Feb. 24, 2014). Courts view the adversarial context of a litigated FLSA suit as an indicator that a settlement is fair and reasonable. *Lynn's Food Stores,* 679 F.2d at 1354 ("Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context."); *see also Pliego*, 313 F.R.D. at 130. The parties do not state the amount of the reward that they anticipate each class member will receive under the settlement, but they explain that the class members' recoveries from the settlement fund will be calculated pro rata based on the number of hours each member worked for Holtzman. Docket No. 168 at 25. Accordingly, neither the parties nor the Court is able to determine how the class members' recovery compares to their actual damages at this juncture. *Compare with Pliego,* 313 F.R.D. at 130 (finding compensation adequate

where class members who filed claims would receive 100% of their actual and potential liquidated damages).  Nevertheless, the Court finds that the parties' assertion that funds will be distributed formulaically based on each class member's actual number of hours worked and the fact that the settlement emerged from an adversarial process are sufficient to establish that class members will be adequately compensated for purposes of preliminary approval of the settlement.

The purpose of the FLSA is "to protect employees' rights from employers who generally wield superior bargaining power."  *Pliego*, 313 F.R.D. at 130.  To determine whether a settlement undermines the purpose of the FLSA courts consider: (1) the presence of other similarly situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA.  *Id.*, 313 F.R.D. at 130 (citing *Baker*, 2014 WL 700096, at *2).  Here, the parties agree that there are 809 putative class members who were similarly situated to the named plaintiffs because they were subject to the same policies and practices at the same locations during the same time period.  Docket No. 168 at 24.  However, the record contains no indication that Holtzman is likely to reenact the policies and practices at issue in this case, nor do the parties allege that Holtzman has a history of noncompliance with the FLSA.  Furthermore, the terms of the proposed settlement agreement contain no confidentiality provision, with the result that the agreement would become public and would alert any future plaintiffs of prior allegations of Holtzman's improper conduct.  *See Baker*, 2014 WL 700096, at *2 (finding that the lack of a confidentiality agreement was an indication that the agreement did not undermine the purpose of the FLSA); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d, 1227, 1244-46

(discussing the importance of a public record of FLSA settlement agreements with regard to the policy goals of the FLSA).  Accordingly, the Court finds that the settlement agreement does not frustrate the purposes of the FLSA.

In addition, Rule 23 requires that "the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation."[1]  *Rutter*, 314 F.3d at 1188 (citation omitted).  The parties agree that this is the case.  Docket No. 168 at 25.  Holtzman asserts that "the class-wide damages claimed by Plaintiffs, even just with respect to the alleged rest break violations, far exceed amounts Defendant would be able to pay should Plaintiffs succeed in obtaining judgment" and that, by going to trial, Holtzman would risk insolvency, which would further complicate and delay proceedings.  *Id*.  The parties agree that a trial would present a "significant risk" for both sides, as plaintiffs might not prevail after a trial, appeal, or bankruptcy proceeding.  *Id.*  A settlement ensures that the class receives compensation and that Holtzman obtains a global release of the wage and hour claims asserted against it in this case.  *Id.*  Accordingly, the parties have demonstrated that the value of immediate recovery outweighs the possibility of future relief after litigation.

### (5) Parties Think the Settlement is Fair

The parties stipulate that they both believe the settlement is fair and reasonable.  Docket No. 168 at 26.  Accordingly, the Court finds this factor satisfied.  *See Pliego*, 313

---

[1] This requirement is one of four factors that courts use to evaluate fairness under Rule 23(e).  *Rutter*, 314 F.3d at 1188.  However, the other three factors—honest negotiation, whether serious questions of law and fact exist, and whether the parties believe that the settlement is fair and reasonable—are considered separately when evaluating a hybrid settlement using the *Pliego* framework.  *Pliego*, 313 F.R.D. 128-32.

F.R.D. at 131 (finding parties' representation that they believed the settlement was fair and reasonable sufficient to establish this prong).

### (6) Reasonable Service Payment to the Named Plaintiffs

The parties ask the Court to preliminarily approve an award of $10,000 for each of the named plaintiffs.  Docket No. 168 at 26.  "'[N]amed plaintiffs . . . are eligible for reasonable incentive payments' as part of a class action settlement."  *Pliego*, 313 F.R.D. at 131 (quoting *Staton v. Boeing,* 327 F.3d 938, 977 (9th Cir. 2003)).  When evaluating reasonableness, courts consider factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of workplace retaliation."  *Id.* (quotations, citation, and alterations omitted).  Here, the parties state that the named plaintiffs "have also been instrumental in working toward a class-wide settlement, and have each spent many hours of their time, sometimes rearranging work, health, and family obligations, to attend meetings, answer written discovery, have their depositions taken, and take phone calls related to the case over a three-year period."  Docket No. 168 at 26.

An award of $10,000 is within the range of awards that courts have approved in similar cases.  *See, e.g., Pliego,* 313 F.R.D. at 131 (finding an award of $7,500 reasonable); *Dorn v. Eddington Sec., Inc.,* 2011 WL 9380874, at *7 (S.D.N.Y. Sep. 21, 2011) (finding an award of $10,000 reasonable in a case concerning alleged violations of the FLSA and New York labor law); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 at *17 (N.D. Cal. Jan. 26, 2007) (finding an award of $25,000 reasonable in a case

concerning violations of the FLSA and several states' labor laws).  Accordingly, the Court finds the award of $10,000 to the named plaintiffs reasonable.

### (7) Release Language

Although there is debate among courts as to whether the extinguishment of FLSA claims though Rule 23 class settlements conflicts with the congressional intent behind the FLSA, courts in this district have concluded that normal *res judicata* principles apply to hybrid settlements.  *Pliego*, 313 F.R.D. at 132 (citing *Kuncl v. Int'l. Bus. Machs. Corp.*, 660 F. Supp. 2d 1246, 1250 (N.D. Okla. 2009), and *Lipnicki v. Meritage Homes Corp.,* 2014 WL 923524, at *15 (S.D. Tex. Feb. 13, 2014)); *see also Hunter v. CC Gaming, LLC,* No. 19-cv-01979-DDD-KLM, 2020 WL 13444205, at *2 (D. Colo. May 12, 2020).  The result of the application of *res judicata* is that individuals who do not opt out of the Rule 23 class, but do not opt in to the release of FLSA claims, are nevertheless bound by the settlement unless they show grounds for collateral attack on the judgment.  *Pliego,* 313 F.R.D. at 132; *Hunter*, 2020 WL 13444205 at *2.  To address this discrepancy, the *Pliego* court required that the notice to class members and claim forms conspicuously inform class members that returning the claim form would prevent them from filing a claim under the FLSA.  *Pliego,* 313 F.R.D. at 132.  Moreover, this Court stated in its order denying Holtzman's motion to bifurcate the state and federal claims that a "conspicuous disclaimer in the Rule 23 notice" could alleviate confusion among class members.  Docket No. 67 at 7 n.2.

Here, the parties' proposed notice to class members describes the extinguishment of a member's FLSA claim in a section entitled, "What are my rights as a member of the 'Class'?":

> As a member of the Class, you have the right to receive money from the settlement.  However, you are giving up your rights to bring a separate claim against Holtzman for violation of the Fair Labor Standards Act, the Colorado Minimum Wage Act, and the Colorado Wage Claim Act unless you return the opt-out form.  You must opt out of the lawsuit, by submitting the opt-out form by [opt-out deadline] in order to bring a separate claim against Holtzman for violation of the Fair Labor Standards Act, the Colorado Minimum Wage Act, and the Colorado Wage Claim Act.

Docket No. 168-2 at 5.  The section of the class notice form that contains instructions for opting out of the settlement reiterates that failing to opt out is "giving up your right to be excluded from the Class, which means that you cannot bring a separate lawsuit against Holtzman for the same claims alleged in the current lawsuit."  *Id.*  Additionally, the class notice form makes it clear that class members who do not opt out will be bound by the settlement, stating that, "[i]f you do nothing in response to this Notice, you will release claims under federal and state law related to the payment of overtime and wages against Holtzman between December 13, 2017 and December 14, 2022."  *Id.* at 2.  The parties' proposed opt-out form states in two places that opting out permits a would-be class member to bring another lawsuit regarding the same claims.  Docket No. 168-3 at 2.  The Court finds these disclaimers sufficient to give putative class members notice that failing to opt out extinguishes their claims under the FLSA.  Accordingly, the Court finds that this factor has been satisfied.

In summary, the Court finds that all of the factors used to evaluate hybrid settlements have been satisfied.

## VI.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for

"any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar.  *DeJulius*, 429 F.3d at 944.

The proposed notice in this case provides potential class members with information regarding the class action, the terms of the settlement agreement, the plan of allocation, attorneys' fees and expenses, the fairness hearing, and how recipients can opt out of the class or object to the terms of the settlement agreement.  Docket No. 168-2.  Furthermore, as discussed above, the proposed notice conspicuously informs potential class members that failing to opt out of the Rule 23 class will result in the extinguishment of the potential class member's FLSA claims.  The notice also explains that a class member is not required to do anything to receive a settlement payment.  *Id.*

at 2.  This complies with Rule 23's opt-out requirement.  *See* Fed. R. Civ. P.

23(c)(2)(B)(v).

The settlement agreement provides that the settlement administrator will

distribute the notice to class members in English and Spanish through first class mail,

email, and text message.  Docket No. 168 at 7.  Accordingly, the Court is satisfied that

the notice is reasonably calculated to apprise the absent class members of the action.

*In re Integra*, 262 F.3d at 1111.

## VII.  CLASS COUNSEL

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P.

23(g).  In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential
> claims in the action; (ii) counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted in the action; (iii)
> counsel's knowledge of the applicable law; and (iv) the resources that
> counsel will commit to representing the class; [and] (B) may consider any
> other matter pertinent to counsel's ability to fairly and adequately represent
> the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  The settlement agreement lists counsel for the named

plaintiffs—Shelby Woods, Adam Harrison, and Claire Hunter of HKM Employment

Attorneys—as class counsel.  Docket No. 168-1 at 4.  As described above, class

counsel has extensive experience in employment class actions, and their knowledge of

the applicable law, as exhibited in the case up to this point, weighs in favor of their

appointment.  Therefore, the Court finds that it is appropriate to appoint plaintiffs'

counsel as class counsel.

## VIII.  ADDITIONAL PROCEDURES

The Court will adopt the following notice, fairness hearing, and opt-out schedule based on the parties' proposed schedule.  *See* Docket No. 168-5.  Accordingly, the following deadlines apply:

| Event | Time for Compliance |
|---|---|
| Deadline for distributing the notice and opt-out form to the class. ("Notice date") | Not later than fourteen (14) days after the date of entry of the Court's Preliminary Approval Order. |
| Deadline for class members to object to the settlement | No later than 40 days after the Notice date. |
| Deadline for class members to opt out ("opt-out date") | No later than 60 days after the Notice date. |
| Deadline for parties' counsel to exchange all written objections and requests for exclusion, along with a list of class members entitle to payment | No later than 10 days after the opt-out date |
| Deadline for plaintiffs' counsel to make calculations of settlement payments to class members who did not opt out of the settlement | No later than 30 days after the opt-out date |
| Deadline to file motions seeking final approval and approval of reasonable attorneys' fees, costs, and service awards. | At least 14 days before the final fairness hearing |
| Deadline for defendant to remit $350,000 of gross settlement amount to the settlement administrator | No later than 14 days after final approval and the passing of the deadline for appeals or resolution of appeals regarding approval ("effective date") |
| Date of distribution of payment for attorneys' fees, costs, and service awards to named plaintiffs | 30 days after effective date |
| Date of disbursement of settlement payments to class members who have not opted out | 30 days after effective date |
| Deadline for plaintiffs to file stipulation to dismiss lawsuit with prejudice | No later than 3 business days following receipt of the gross settlement payment from the settlement administrator and confirmation of disbursement of settlement payment sot class members who have not opted out |

In addition, the settlement administrator shall engage in reasonable efforts to locate the current address of any class member whose notice and opt-out form is returned as undeliverable within five days of the receipt of the undeliverable notice. Docket No. 168-1 at 19, ¶ 24. Similarly, the settlement administrator shall engage in reasonable efforts to re-distribute settlement payments to any checks returned as undeliverable within five days following the receipt of the undeliverable notice. *Id.* at 22, ¶ 31. The settlement payments shall remain valid for 90 days after they have been disbursed to class members who did not opt out.

The parties shall contact the Court's chambers to set a date for the fairness hearing within seven days of the entry of this order.

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Joint Motion for Preliminary Approval of Proposed Collective and Class Action Settlement [Docket No. 168] is **GRANTED**. It is further

**ORDERED** that the parties shall contact the Court's chambers within seven days of the entry of this order to set a date for the fairness hearing.

DATED May 22, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge